No. 1002

First Circuit

---

TOBIAS v. SCHLOSS

---

(February 12, 1927. Opinion and Decree.)
(March 8, 1927. Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Landlord and Tenant —Par. 43, 46.**

Where the lessor agrees to build a filling station and accessories thereto, and conduct it as such during the term of the lease, turning it over to the landlord at the expiration thereof, the closing of the station permanently by the lessor constitutes a breach of the lease contract terminating the lease

and making the landlord the owner of the improvements placed on the property.

Appeal from the District Court, Parish of East Baton Rouge. Hon. W. Carruth Jones, Judge.

Action by Mrs. Pauline M. Tobias, Lewis Gottlieb, substituted for Mrs. Tobias, against Edward Schloss.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Cross & Moyse, of Baton Rouge, attorneys for plaintiff, appellant.

Benton & Benton and Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for defendant, appellee.

ELLIOTT, J. This suit was instituted by Mrs. Pauline M. Tobias against Mr. Schloss, tried and decided in the lower court contradictorily between them, but about the time the decision was rendered Mrs. Tobias sold the property in dispute to Lewis Gottlieb and substituted him in her place in the litigation with Mr. Schloss. The record shows that Mr. Gottlieb was recognized in the lower court as substituted in the case in place of Mrs. Tobias and was granted an appeal to this court. He is now the appellant in the case.

Mrs. Tobias alleges in her petition that on August 23, 1922, she entered into a written contract with Mr. Schloss, whereby she leased to him the southeastern portion of Lot No. 4 in Square No. 33 of the City of Baton Rouge, known as the Suburb Gracia, measuring 50 feet front on North street by 100 feet in depth between parallel lines along the Jackson road; being the northwestern corner of the intersection of North street and Jackson road. The lease was for a period of five years beginning September 1, 1922, at a rental of $100.00 per month. The total, $6000.00, divided into 60 installments of $100.00 each, the first coming due October 1, 1922. The contract binds the lessee in addition to the monthly rental to erect on the premises a gasoline filling station, with stationary and permanent improvements and equipment, to cost not less than $3000.00, to pay all the taxes on the property during the period of the lease, and keep same constantly in good repair throughout the period of the lease. The contract further provides that the buildings and improvements are to be erected within a year from September 1, 1922, and that at the expiration of the lease all the buildings and improvements, except equipment not affixed to the realty, becomes the property of the lessor without any compensation to the lessee. The lessee also bound himself to keep the improvements constantly insured against loss by fire in the sum of not less than $3000.00, and in case of loss by fire the insurance was to be used by him for no other purpose than to replace and rebuild a filling station on the same site. A loss by fire was not to terminate the lease; but the insurance was to be used by the lessee to replace and rebuild the filling station, and the same was to be conducted as before. It was distinctly agreed in the lease that the premises should never be used for any other purpose than to conduct a filling station, furnishing battery service, sale of automobile accessories, washing, cleaning and storing of cars. Any violation of the lease gave the lessor power to terminate the lease and retake the property with the buildings and improvements thereon without compensation to the lessee.

The petition alleges that defendant erected a filling station building within

the time provided by the contract and conducted and maintained a filling station business in the building on the premises until February 28, 1926, when he discontinued the business, placing on the station a large sign as follows:

"Notice.—On and after March 1 this station will be closed permanently. All business will be handled from the East End Service Station.      (Signed) Ed. Schloss, Prop."

And that said Schloss had, from that date, closed and abandoned the station. That said closing and abandonment constitutes a violation of the lease. That the object and purpose of said Schloss in so doing was to ruin said corner as a filling station and to attract the business therefrom to another filling station belonging to and conducted by him some three blocks distant, known as the East End Service Station.

That said closing and abandonment was damaging to her in that it made the filling station erected on her lot under the contract less desirable by reason of the fact that the business would be attracted elsewhere and the rental value of the same depreciated.

That her premises is most valuable as a filling station, the building constructed thereon being fit only for such use, and that after the same has been closed and abandoned for the balance of the lease, a period of eighteen months, the City of Baton Rouge will in all probability treat it as abandoned, and refuse to permit it to be reopened.

That the conduct of said Schloss justifies the termination of the lease, which he refuses to acknowledge and continues to withhold the premises from her.

The defendant answered plaintiffs petition at length, but the sum and substance of his answer is that all of the trade and business that had been done at the filling station in question had been brought there by himself after the erection of the station, and that it was agreed and understood as part and condition of the lease that he had a right to discontinue the use of the premises as a filling station at any time during the lease if he saw proper to do so. That in closing the station and in placing on it the sign mentioned, he was acting within his rights under the contract.

The district judge held that the closing of the filling station and the discontinuance of the business there did not justify the cancellation of the lease, and rejected plaintiff's demand.

A large amount of parol testimony was taken on the trial. It shows that Mrs. Tobias, the owner of the corner in question, which is a corner lot, had almost made arrangements with other parties to erect a filling station at that place. They had offered to erect a proper building at a cost of not less than $3000.00 at their own expense, equip it with all necessary fixtures, pay her $100.00 a month rent, and at the end of five years turn the property back, with the buildings and improvements thereon, without charge or cost to her. Defendant heard of the arrangement about to be completed and, looking on the filling station about to be erected as a competition business with his own, sought out Mrs. Tobias and complained to her that she should have first considered him before entering into an agreement with others for the erection and conduct of a filling station at that place, and that he was in the market for another filling station in addition to the one he already owned.      The evidence shows that Mrs. Tobias and Mr. Schloss were connected by ties of affinity and that their family-

relations were very close. The result was that Mrs. Tobias and Mr. Schloss entered into the agreement which we are now called upon to interpret, as to their rights thereunder.

The parties do not allege error or ambiguity in the agreement, but the plaintiff contends that the contract binds the defendant to continuous maintain and conduct a filling station at that place, in the building erected under the contract, from September 1, 1923, to September 1, 1927; and that closing the station, discontinuing the business and placing on it a sign as stated, constitutes such a violation of the same that she is entitled to have decreed a termination of the contract and cancellation of the lease. On the other hands, the defendant contends that, under the contract, he had the right to do as he has done. Therefore, the question is, what was the intention of the parties and what does the contract contemplate. The attorneys for the parties have furnished us with able and elaborate briefs. It will serve no particular purpose to analyze, apply or differentiate the authorities from the contract before us, because it seems to us that the intent of the parties can only be ascertained by careful reading of the contract in question, looking at its provisions, keeping in mind the object and purpose for which the buildings were erected on the lot by the lessee. The contract does not expressly say that the lessee is bound to conduct and maintain a filling station at the place and in the buildings erected under the lease, for the entire period of the lease, but we have come to the conclusion that such intent does, nevertheless, appear from the arrangements and stipulations of the parties. The contract is founded on the primary obligation of the lessee to erect a filling station building, with fixed and permanent improvements, and to keep it in good repair throughout the duration of the lease. The lessees obtained the right to defer the erection of the building for one year after the contract was entered into, because it was not convenient for him to spend $3000.00 in erecting the buildings required by the contract at the time. Now, in view of the close relation of the parties, if the conduct of a filling station business at that place was not the purpose of the contract, the erection of the building might just as well have been still longer deferred. The erection of this filling station building appears throughout the contract as the primary condition of the contract, and what was the use of erecting it at such an expense, a building not suitable for any other business, if it was not the intention of the parties and the contemplation of the contract that it was to be kept in use as such. The contract obliged the lessee to keep the building in constant order and condition for that purpose. What was the use of doing so if the lessee had the right under the contract to permanently close it and discontinue the business as he has done.

The arrangement about insurance, whereby in case the building first erected was destroyed by fire, the insurance could not be used except to replace and rebuild a filling station on the same site, to be maintained and conducted as was provided for the one first erected, indicates an intention by the parties to keep and maintain a filling station building; and no good reason suggests itself for such provision except that it was to be used and a business conducted in it, to be turned over to the lessor at the end of the lease, as a going concern.

The agreement states that the premises shall never be used for any purpose other than the conduct of a gasoline filling sta-

tion, furnishing battery service, sale of automobile accessories, washing, cleaning and storing cars.

Having reached the conclusion that defendant, by closing the station permanently, placing a sign on it as he did, committed a very serious breach of the contract in question, it results that the judgment appealed from should be, therefore, avoided, annulled and set aside.

The contract of lease entered into between Mrs. Pauline M. Tobias and Edward Schloss on August 23, 1922, is decreed to have terminated as a result of having been violated on the part of the lessee, in the way stated, and it is ordered that same be cancelled and that the lessee vacate the premises. That Louis Gottlieb, present owner be placed in possession of the lot and improvements thereon as forfeited to him under the contract.

It is further ordered that the defendant and appellee pay the costs in both courts.